**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Stickney, | No. CV-20-01407-PHX-SPL |
| Petitioner, | |
| vs. | **ORDER** |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Petitioner Andrew Stickney seeks judicial review of the denial of his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). (Doc. 1). Petitioner argues the Administrative Law Judge ("ALJ") erred by (1) rejecting two physicians' opinions and (2) rejecting his symptom testimony. (Doc. 17 at 1). He seeks a remand for benefits, or in the alternative, a remand for further proceedings. (Doc. 18 at 24–25).

Before the Court is Petitioner's Complaint (Doc. 1), Opening Brief (Doc. 17), Defendant Commissioner of Social Security's Answering Brief (Doc. 18), and the Administrative Record (Doc. 16) (henceforth "R."). No reply brief has been filed and the time to do so has passed. Because the Court finds no legal error on the part of the ALJ, it will affirm the Social Security Administration's decision.

I.      **BACKGROUND**

Petitioner filed an application for Title XVI disability benefits and Child Disability on May 12, 2016, alleging disability beginning January 4, 2002. (R. at 18–19). He amended

the disability onset date at his hearing before the ALJ, changing it to January 10, 2009. (R. at 18). The ALJ denied Petitioner's request on August 27, 2019. (R. 15–17). Petitioner requested reconsideration of the ALJ's determination, which was denied on June 25, 2020. (R. at 1–3).

The ALJ found Petitioner had a "severe" impairment of "obesity; bipolar disorder; generalized anxiety disorder; and obsessive-compulsive disorder." (R. at 21) (emphasis omitted). The ALJ found Petitioner was capable of medium work, and that he could

> frequently crawl and climb ramps or stairs. He can occasionally climb ladders, ropes, or scaffolds. He can have frequent exposure to vibrations. He can perform simple routine repetitive tasks. He can work in an environment free of production-rate pace requirements. He can frequently interact with supervisors. He can occasionally interact with co-workers and the public.

(R. at 23–24). The ALJ gave the opinions of the state disability determination services doctors "great weight." (R. at 34). He gave examining psychologist Dr. Yoches' opinion "little weight" because the opinion was inconsistent with Petitioner's abilities. (R. at 34). The ALJ discredited Petitioner's testimony regarding the severity of his symptoms. (R. at 32–33). The ALJ rejected the testimony of treating physician Dr. Benjamin. (R. at 33). A vocational expert testified that Petitioner could perform work as a janitor, car washer, warehouse worker, laundry worker, motel housekeeper, or general lot attendant. (R. at 36–37). The ALJ concluded Petitioner was not disabled from the alleged onset date to the date of the hearing. (R. at 37).

Petitioner alleges the ALJ erred by improperly rejecting his treating physician's assessment, the examining physician's assessment, and his own testimony. (Doc. 17 at 1).

## II.   LEGAL STANDARDS

A person is considered "disabled" for the purpose of receiving social security benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (9th Cir. 2017) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she or] he did not rely." *Id.* The Court will not reverse for an error that is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

## III.   DISCUSSION

### A. Physician opinions

The Court will first discuss the ALJ's treatment of Dr. Benjamin's opinion, followed by the treatment of Dr. Yoches' opinion.

#### 1. *Treating physician*

The ALJ rejected the opinion of treating physician Dr. Benjamin. (R. at 33). Treating physician's opinions are normally given "controlling weight," but they are not entitled controlling weight if the opinion is not "well-supported" or inconsistent with other substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If the treating physician's opinions are not entitled controlling

weight, the Administration considers specific factors in determining the weight they will be given, including "length of the treatment relationship and the frequency of examination" by the treating physician; the "nature and extent of the treatment relationship" between the patient and the treating physician; the supportability of the opinion (whether there are lab findings or other medical signs); consistency with the record; and whether the treating physician specializes in the area at issue. § 404.1527(c). If the opinion of a treating physician is controverted by another doctor's opinion, the ALJ must find specific and legitimate reasons for rejecting the treating physician's testimony. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

Dr. Benjamin's opinion was controverted by the opinions of state agency consulting physicians Robert Quinones and Ernest Griffith. (R. at 34). The ALJ acknowledged the treating relationship between Dr. Benjamin and Petitioner, but discounted Dr. Benjamin's opinion because the opinions are "grossly inconsistent with the overall medical evidence of the record, including the claimant's testimony during the hearing." (R. at 33). The ALJ also said the opinions were inconsistent with Petitioner's therapy progress notes, with his ability to graduate cum laude from the University of Arizona, and his hobbies, interests, and activities. (R. at 33).

In reviewing Dr. Benjamin's opinions, treatment notes, Petitioner's activities, hobbies, and accomplishments, the Court finds the ALJ cited to substantial evidence showing Dr. Benjamin's opinions that Petitioner has severe social limitations and limited mental capabilities are not well-supported by the record. (R. at 33, 761–63, 1076–80). Petitioner's hearing testimony and treatment notes from visits with Dr. Benjamin and other providers show he had very good grades in college while living on-campus and is able to compose music, practice, and perform with his rock band. (R. at 54, 56–59, 66–68, 588, 615, 617, 619, 621, 633, 671, 885, 901, 935, 971, 978, 980, 982, 984, 998, 1000, 1009). While there are treatment notes indicating Petitioner's struggles with anxiety and mood management, (R. at 556, 626, 628–29), it is the ALJ's responsibility to resolve conflicts in the record. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)

(citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). Therefore, the Court finds the ALJ did not err when he discounted Dr. Benjamin's opinion.

### 2. *Examining physician*

While the opinion of a treating physician is generally "entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). (internal citations omitted). "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle*, 533 F.3d at 1164 (internal citation omitted). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (citation omitted). An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

Examining physician Dr Yoches' opinion was controverted by Drs. Quinones and Griffith. (R. at 34). The ALJ gave little weight to Dr. Yoches' opinion because he found her assessment of Petitioner's social and adaptability limitations to be inconsistent with the record. (R. at 34). The ALJ referenced Petitioner's abilities to "navigate the complexities of college," work at Walmart, and play in a band. (R. at 34). In reviewing Dr. Yoches' assessment, the hearing testimony, and the rest of the record, the Court finds the ALJ did not err by discounting Dr. Yoches' testimony. As stated above, Petitioner testified and the record shows that he was able to graduate college with great grades while living on campus, work at Walmart for a prolonged period, and practice, play, write songs, and perform with his band. (R. at 54, 56–59, 66–68, 588, 615, 617, 619, 621, 633, 671, 737–38885, 901, 935, 971, 978, 980, 982, 984, 998,1000, 1009). These are sufficient specific and legitimate reasons for discounting Dr. Yoches' opinion. Thus, the Court finds the ALJ did not err.

### B. Petitioner testimony

In evaluating a claimant's testimony, the ALJ is required to engage in a two-step

analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id*. If the first test is met and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing specific, clear, and convincing reasons for the rejection. *Id*. The reasons must be supported by substantial evidence. *Garrison*, 759 F.3d at 1014–15. The ALJ need not engage in "extensive" analysis but should, at the very least, "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [his] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal citations omitted). Importantly, the ALJ "cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 n. 11 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Petitioner argues the ALJ erred in rejecting his subjective symptom testimony because the ALJ found his medically determinable impairments could reasonably be expected to cause the alleged symptoms but found the severity of the symptoms was unsupported by the medical record, which Petitioner argues is a legal error. (Doc. 17 at 22–24). Petitioner argues the ALJ erred by rejecting his testimony because he ignored medical evidence, failed to cite to records showing progress, and mischaracterized his daily activities. (Doc. 17 at 22–23). Defendant argues the ALJ did not err, because substantial evidence supports the ALJ's findings: the subjective complaints were not supported by the medical records, treatment was effective, and Petitioner's activities supported the level of activity assessed by the ALJ, which he noted. (Doc. 18 at 18–23). Defendant pointed out the ALJ acknowledged contradictions in the record but resolved them based on the bulk of the evidence. (Doc. 18 at 20–21).

The ALJ found Petitioner's "severe medically determinable impairments could reasonably be expected to cause the alleged symptoms," but concluded his statements as

to the intensity, persistence, and limiting effects of those symptoms were "not consistent with the medical evidence and other evidence in the record." (R. at 24). There was no finding of malingering. Thus, the Court looks to see whether the ALJ provided appropriate reasoning for rejecting the testimony.

The ALJ found Petitioner's testimony to be inconsistent with the severity of his conditions shown in his medical records, with his own testimony at the hearing, and with his reported activities. (R. at 24–33). The ALJ embarked on a lengthy discussion of the record, including internal contradictions, ultimately concluding "[t]his evidence greatly indicates that the claimant's mental health conditions are not as serious or debilitating as claimed." (R. at 33). When there are conflicts within the record, it is the ALJ's responsibility to resolve them. *Carmickle*, 533 F.3d at 1164 (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)).

### 1.  *Petitioner's medical records*

The Ninth Circuit has held that "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)). However, the ALJ may consider medical evidence as one factor in the credibility analysis. *Burch*, 400 F.3d at 681.

As outlined above, the ALJ found Petitioner's medical records support a finding of severe impairment due to obesity, bipolar disorder, generalized anxiety disorder, and obsessive-compulsive disorder. (R. at 21). As to obesity, the ALJ specifically cited to Petitioner's treatment notes and physical examinations that show his gait is normal and he suffers from no "cardiovascular, musculoskeletal, or neurological issues." (R. at 30, 536, 539, 543, 547, 553, 557, 560, 671, 705, 709). The medical evidence shows Petitioner's physical condition will not keep him from performing medium level work.

As to Petitioner's alleged mental disabilities, the ALJ cited to his therapy records, treatment notes from Dr. Benjamin, and notes from other treating providers, like NP Joyce

Rosette, that show Petitioner had a normal mood, normal cognition, insight, judgement, and "strong intellectual and cognitive functioning skills." (R. at 30, 536, 539, 543, 547, 553, 557, 705, 734–35, 773, 798, 950, 1013). The ALJ cited evidence showing he engaged in "a pleasant and cooperative manner" with his providers. (R. at 31, 536, 539, 543, 547, 553, 734, 930).

Here, the ALJ has determined the records show Petitioner's subjective complaints are overblown. (R. at 30–31). However, as stated, the ALJ's credibility determination cannot rely on consistency or inconsistency with the medical records alone, so the Court must turn to the other factors the ALJ cited. *See Lingenfelter*, 504 F.3d at 1040.

### 2.  Petitioner's course of treatment

The ALJ may consider the effectiveness of medication and treatments. 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.").

The ALJ cited medical records showing treatment for Petitioner's mental diagnoses helped stabilize his moods and other "mental health symptoms. (R. at 29–30, 702, 707, 734, 984, 1013). Petitioner takes or has taken Depakote, Wellbutrin, and Latuda. (R. at 28–30, 703, 707, 918, 1011). He also participates in martial arts, which he stated help his anxiety symptoms. (R. at 703). While Petitioner still suffers some mood fluctuations, the ALJ's summary of contradicting evidence in the record is sufficient to find Petitioner's subjective testimony incredible. *See, e.g., Belcher v. Berryhill*, 707 F. App'x 439 (9th Cir. 2017). The Court finds the ALJ did not err in his evaluation of Petitioner's treatment records.

### 3.  Petitioner's daily activities

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports

participation in everyday activities indicating capacities that are transferable to a work setting[.]" *Parsons v. Colvin*, 111 F. Supp. 3d 1009, 1018 (D. Ariz. 2015) (internal quotation omitted). "[T]he ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681.

The ALJ discredited Petitioner's testimony due to his daily activities. (R. at 31–32). He worked as a part-time maintenance associate at Walmart, graduated cum laude from the University of Arizona with a bachelor's degree while living in the dorms, plays in a band, socializes with friends, and participates in a church choir. (R. at 31–32, 54, 57, 59–61, 66, 68–69, 340, 348, 437, 588, 621, 625, 670, 732–34, 787, 901, 935, 971, 978, 980, 982, 984, 998, 1000, 1005, 1007, 1009). Furthermore, Petitioner made remarks during his testimony and during treatment sessions that indicate he quit his past jobs either because he didn't like them or because he preferred to focus on his music. (R. at 61, 69, 617, 779, 953, 1000).

"'Even' when daily "'activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" *Morris v. Berryhill*, 358 F. Supp. 3d 875, 885 (D. Ariz. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012) (superseded by regulation on other grounds)). The Court finds the ALJ did not err when he discredited Petitioner's testimony due in part to his daily activities, which suggest a high level of cognitive and social abilities.

Overall, the ALJ did an extremely thorough job of summarizing the contradicting evidence in the record, which is sufficient to find subjective symptom testimony incredible. *See Belcher*, 707 F. App'x 439.

### IV.   **CONCLUSION**

Because the Court finds the ALJ's rejection of Petitioner's testimony was accompanied by specific, clear, and convincing reasons supported by substantial evidence, and the ALJ's discounting of the physician opinions was supported by specific and legitimate reasons, there can be no finding of legal error by the ALJ.

Therefore,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 26th day of August, 2021.

Honorable Steven P. Logan
United States District Judge